UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KHALIL O. JACKSON,

                              Plaintiff,                    **COMPLAINT**

VS.

                                                           Civil Action No.
MORGAN STANLEY SERVICES GROUP INC.,                        1:20-cv-2843

                              Defendant.

---

     Plaintiff Khalil O. Jackson, by and through his attorneys D'Orazio Peterson LLP, as and for his Complaint against Defendant Morgan Stanley Services Group Inc. alleges as follows:

## NATURE OF ACTION

1. Plaintiff Khalil O. Jackson ("Plaintiff") brings this action against his former employer Defendant Morgan Stanley Services Group Inc. ("Defendant" or "Morgan Stanley") for violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq.; the New York State Human Rights Law ("NYHRL"), New York Executive Law § 290, et seq.; and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107 et seq.

## JURISDICTION

2. This Court has subject matter jurisdiction over this action pursuant to 38 U.S.C. § 4323(a)(3), (b)(3) and 28 U.S.C. §§ 1331 and 1367.

## PARTIES

3. Plaintiff is an individual residing in New York, New York.

4.   Upon information and belief, Defendant is a foreign business corporation organized under the laws of the State of Delaware and authorized to do business in the State of New York, maintaining principal offices at 1585 Broadway, New York, New York.

5.   At all times relevant, Plaintiff was employed at Defendant's 750 7th Avenue, New York and 1 New York Plaza, New York locations.

## VENUE

6.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 38 U.S.C. § 4323(c)(2) because the events giving rise to this claim occurred in New York County, New York, and Defendant maintains a place of business in such County, which is located within this judicial district.

## FACTS

7.   Plaintiff, an African American male, was employed by Defendant from 1999 through August 2017 when he resigned due to the actions of Defendant as set forth more fully herein.

8.   At all times relevant, Plaintiff was and is a member of the United States Army Reserve. Plaintiff enlisted in the Army in or about November 10, 2010, and informed Defendant of his intention to enlist in the Army in 2010.

9.   During his military tenure, Plaintiff has served two tours in Afghanistan and has received numerous awards and decorations including: Defense Meritorious Service Medal, three Army Commendation Medals, three Army Achievement Medals, Army Reserve Component Achievement Medal, National Defense Service Medal, Afghanistan Campaign Medal (two Campaign Stars for two distinct campaigns), Global War on Terror Service Medal, Army Service Ribbon, Army Reserves Overseas Service Ribbon, Armed Forces Reserve Medal (Mobilization

Device), and United Nations Commendation for Contributions to Safety and Security of UN Mission to Afghanistan.

10. In addition to his accomplishments in the military, as well as in his civilian employment, Plaintiff is a volunteer EMT and also assists veterans transitioning to the civilian workforce within a variety of finance and technology related fields.

11. At all times relevant, Plaintiff was employed by Defendant in the position of Vice President, had a positive performance history, and was qualified and able to perform the functions of his position and the positions to which he should have been promoted as set forth more fully herein.

12. At all times relevant, the decision makers with respect to Plaintiff's employment, promotions and bonuses were Caucasian and were not veterans or servicemembers.

13. At all times relevant, Defendant's senior executives and managing directors at Plaintiff's locations of employment were all Caucasian.

14. During the course of his employment, given his seniority and experience, Plaintiff reasonably expected his career to undergo an upward trajectory typical in the industry, including to be considered for promotion, and ultimately promoted, beyond the position of Vice President.

15. During the course of his employment, despite his positive performance history, seniority and experience, when it came time for Plaintiff to be promoted, he was often told by Defendant that he was "not ready yet" without being given any specifics.

16. In the industry, "not ready yet" is code for discrimination, typically race or sex as applicable.

17. Prior to advising Defendant of his enlisting in 2010, Plaintiff had been put on the promotion list, although he had not yet been promoted beyond the position of Vice President.

18. During the course of his employment with Defendant, Plaintiff was required to miss time from work for military service.

19. After 2010, Defendant never again put Plaintiff on the promotion list and Plaintiff never advanced beyond the position of Vice President.

20. After 2010, Defendant prevented Plaintiff from advancing within the company by failing to put him on the promotion consideration list, failing to promote him thereby depriving him of increased base pay and bonuses, and effectively demoting him by removing his management responsibilities.

21. Throughout the period 2011 through his forced resignation in August 2017, Plaintiff was eligible to receive and should have received promotions, with commensurate increase in base pay and bonuses.

22. Upon information and belief, promotion decisions were typically made in October or November, and were effective January of the following year.  At some point prior to October or November, an employee such as Plaintiff would typically be informed whether they would be placed on the promotion consideration list.

23. Plaintiff was out of work from approximately February 1, 2011 through July 6, 2011 for military training.

24. Following his return, in or about August 2011, Plaintiff was informed that he would not be put on the promotion list.  In a conversation with Frank Cooke, then Executive Director and Head of Technology Business Development, Plaintiff was expressly told he would not be put on the list because he had been on military leave.

25. Plaintiff did not receive a promotion in 2011 despite meeting promotion criteria.

4

26. Plaintiff was out of work from approximately October 12, 2011 through February 28, 2012 for training.

27. During 2012, Defendant regularly asked Plaintiff whether he would be going back out of work for military duty, and Plaintiff acknowledged that it was possible that he would be deployed.

28. During 2012, in conversations with Frank Cooke and Nina Paun (Human Resources), Plaintiff was expressly advised that he was not on the promotion list because of his active duty.

29. At the end of 2012, Plaintiff advised Defendant that he would be deployed to Afghanistan.

30. Plaintiff did not receive a promotion in 2012 despite meeting promotion criteria.

31. Plaintiff was out of work on active duty from approximately February 15, 2013 through January 15, 2014 when he was deployed to Afghanistan as part of Operation Enduring Freedom.

32. Because of his deployment, Plaintiff lost his apartment and, upon his return, was temporarily relocated into a corporate apartment by Defendant.  After Plaintiff had already accepted the relocation and not having been advised that such relocation would have any negative consequences, Defendant informed Plaintiff that his relocation was in lieu of a bonus.  This decision, however, was a departure from Defendant's policies and past practices as other employees, outside of Plaintiff's protected class, had received both a bonus and relocation funds in the past.

33. In or about March 2014, Plaintiff again complained about his lack of promotions and compensation to Frank Cooke and Nina Paun.  On or about March 24, 2014, Marina Smith, a Human Resources coordinator for Defendant, was advised, in writing, of Plaintiff's recent complaint to Ms. Paun, including that Plaintiff had expressly invoked USERRA in this complaint.

34. During 2014, Plaintiff was again informed that he would not be put on the promotion list. Plaintiff spoke with Shawn Melamed, Managing Director and Head of Technology Business

Development (the successor to Frank Cooke), and was told that he was not being put on the promotion list due to his active duty.

35. In or about October 2014, Plaintiff was informed that he would not be given additional responsibility or leadership roles because he might go back on active duty.

36. In or about October 2014, during a telephone conversation, Plaintiff complained to Nina Paun (Human Resources) that declining to promote an employee because of his or her military service was a violation of the law.

37. Plaintiff did not receive a promotion in 2014 despite meeting promotion criteria.

38. During 2014 and 2015, Plaintiff was essentially demoted from his management position and Defendant continued to stymie his advancement in the company.  Specifically, Plaintiff was not given management responsibilities commensurate with his seniority and experience, but rather was an "individual contributor". Subordinates were reassigned and Plaintiff was no longer considered for management positions.  Shawn Melamed also directed Plaintiff not to continue relationships with senior executives at the company without his involvement. Mr. Melamed indicated that only he would make decisions regarding which executives Plaintiff was allowed to meet.

39. During this time period, other leaders outside of Plaintiff's management chain admitted that their conversations with Plaintiff's leadership discouraged them from offering Plaintiff leadership roles as the result of his military reserve status.  For example, after recognizing that Mr. Melamed would fundamentally change Plaintiff's level of interaction with senior executives, Plaintiff went to work for Allison Gorman-Nachtigal, an executive-level manager, in late 2014/early 2015.  Ms. Gorman-Nachtigal did not grant Plaintiff any personnel management

responsibility and, upon information and belief, this was the result of her conversations with Mr. Melamed.

40. In late 2014, given the foregoing, Plaintiff attempted to explore other roles within the company including a position working with Yayoi Vickovic, an executive director.  After some discussions with Ms. Vickovic, a meeting was scheduled for January 2015.  At the time of this meeting, Plaintiff was surprised to find Nina Paun (Human Resources) in attendance.

41. The meeting then turned into an interrogation as to why Plaintiff believed himself to be deserving of a promotion.  Both Ms. Vickovic and Ms. Paun (to whom Plaintiff had recently complained) were combative and confrontational, and ultimately informed Plaintiff he was not a good fit for Ms. Vickovic's team.

42. Plaintiff was out of work from approximately November 29, 2015 through April 14, 2016 for military training.

43. Plaintiff did not receive a promotion in 2015 or 2016 despite meeting promotion criteria.

44. Plaintiff was out of work on active duty from May 5, 2016 through April 19, 2017 when he was deployed to Afghanistan as part of Operation Freedom's Sentinel.

45. Upon his return to work, Plaintiff had a meeting with Allison Gorman-Nachtigal.  Ms. Gorman-Nachtigal informed Plaintiff that it would be difficult for him to be promoted to the position of Executive Director expressly because of his active duty.

46. During this meeting, Plaintiff reported to Ms. Gorman-Nachtigal that Defendant's position was in violation of the law.

47. Throughout Plaintiff's employment, once he began to complain that Defendant's actions were in violation of the law, Plaintiff was routinely told to "leave it alone", code for stop

complaining or you will suffer negative consequences.  Plaintiff heard this from, among others, Moira Kilcoyne (co-head of IT), Brian Uy (her COO) and several managing directors.

48. In or about July 2017, Plaintiff was again informed that he would not be put on the promotion list despite meeting promotion criteria and that he would not be promoted in 2017.

49. During the relevant time period, were it not for Plaintiff's race, military status and associated military service and deployments, Plaintiff would have advanced from the position of Vice President to Executive Director to Managing Director, with concomitant base salary and bonuses.

50. During the relevant time period, similarly situated employees outside of Plaintiff's protected classes with substantially the same skills, performance and seniority, were promoted to the exclusion of Plaintiff.

51. During the relevant time period, less qualified employees outside of Plaintiff's protected classes who were junior to Plaintiff, with less relevant experience and seniority, were promoted to the exclusion of Plaintiff such that they attained higher levels of seniority than Plaintiff.

52. During the relevant time period, despite Plaintiff being told that he was "not ready" (a known racist innuendo) to be promoted, the aforementioned individuals, discussed in further detail herein, were deemed "ready" for promotion by Defendant.

53. Together with other individuals within the knowledge of Defendant, the following individuals, who were not members of Plaintiff's protected classes and who were junior to Plaintiff, were promoted over him to the position of Executive Director: Michael Levine; Jeanette Gamble; Lisa Akeroyd; Ian Ellis; Uri Lichtenfeld; Chris Kozlowski.

54. Rubiana Gaddi and Ian Ellis were both members of Plaintiff's team during 2010-2014 and were promoted to the exclusion of Plaintiff.  In the industry, Plaintiff should have, at the very least, been promoted alongside other members of his team particularly if he had greater seniority.

55. Plaintiff had greater seniority than Ian Ellis having advanced to the position of Vice President (prior to his military enlistment) in 2005 whereas, in 2008, Mr. Ellis was in the position of Associate.

56. Together with other individuals within the knowledge of Defendant, the following individuals, who were not members of Plaintiff's protected classes and who worked under Plaintiff's supervision, were promoted over him to the position of Executive Director: Andrew Dumasresq; Megan Restuccia; Rajeev Talreja.

57. Together with other individuals within the knowledge of Defendant, the following individuals, who were not members of Plaintiff's protected classes and who were promoted to the position of Vice President at or about the same time as Plaintiff, were promoted to the position of Managing Director during the relevant time period: David Rowland; Al Furman.

58. None of the aforementioned individuals who received more favorable treatment as compared to Plaintiff are African American or servicemembers or veterans.

59. After enduring years of stagnation of his career, as well as lost income due to lost promotions and bonuses, resulting from Defendant's actions because of his race and military status, Plaintiff was forced to resign from his position in or about August 2017.

60. Because Plaintiff never advanced to a more senior position than Vice President, his employment prospects and earning capacity were diminished as a result of the actions of Defendant since he could not enter a new job at the appropriate level of seniority and commensurate pay.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Discrimination in Violation of USERRA)

61. Plaintiff repeats and realleges the preceding paragraphs as if set forth more fully herein.

62. At all times relevant, Plaintiff was and is a member of the United States Army Reserve.

63. At all times relevant, Plaintiff complied with all requirements with respect to notifying his employer of active duty or training, and with respect to his return to work after his service.

64. At all times relevant, Plaintiff was honorably released from training or active duty at the time he returned to work.

65. Plaintiff's cumulative time out of work on military duty was less than five (5) years.

66. USERRA prohibits employers from discriminating against employees by failing to restore them to the appropriate position and by denying them promotions or other benefits of employment because of their military service.

67. When Plaintiff returned from military duty, Defendant was required to reemploy him in the position he would have attained absent his military service.

68. Given his seniority, experience, qualifications and performance, Plaintiff should have been reemployed to a position more senior than Vice President during the period 2011 through 2017.

69. Defendant violated USERRA when it failed to reemploy Plaintiff in a position more senior than Vice President, including Executive Director and then Managing Director, during the period 2011 through 2017.

70. Given Plaintiff's seniority, experience, qualifications and performance, he was eligible for promotion to Executive Director and then Managing Director during the period 2011 through 2017, and should have been promoted to such positions during this time period.

71. Defendant violated USERRA when it failed to promote Plaintiff during this time period because of his military service.

10

72. Defendant expressly advised Plaintiff that he was not being promoted or considered for promotion because of his military service and related time out of work.

73. Throughout the relevant time period, Plaintiff was consistently told that he could not be promoted, and that he should not expect to be promoted, if he was going to miss time from work for military duty, notwithstanding his qualifications and accomplishments.

74. Plaintiff was eligible to receive bonuses during the time period 2011 through 2017.

75. Following his enlisting in 2010, for each year thereafter, Plaintiff received bonuses that were significantly less than the bonuses he received prior to his enlistment.

76. Had Plaintiff received reemployment and promotions as set forth above, Plaintiff also would have expected to receive increased bonuses commensurate with his more senior position.

77. Defendant violated USERRA when it failed to pay Plaintiff adequate bonuses because of his military service, and when Plaintiff was denied increased bonuses because of Defendant's failure to reemploy and promote him to the appropriate position.

78. Defendant violated USERRA when it stripped him of his managerial functions, failed to assign him additional responsibility commensurate with his seniority, and prevented him from advancing in his career because of his military service.

79. Defendant violated USERRA when it treated other employees outside of Plaintiff's protected class more favorably than Plaintiff, including promoting individuals of comparable seniority and experience, but not Plaintiff, as well as promoting individuals less senior to and less qualified than Plaintiff, but not Plaintiff.

80. Defendant's actions forced Plaintiff to resign from his position in August 2017.

81. Defendant's actions were willful and taken with reckless disregard of the law including after Plaintiff notified Defendant that it was violating the law.

82. Defendant's actions during the period 2011 through August 2017 constitute a continuing violation of the statute.

83. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with liquidated damages and costs and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of USERRA)

84. Plaintiff repeats and realleges each of the preceding paragraphs as if more fully set forth herein.

85. USERRA prohibits employers from retaliating against employees who have exercised a right afforded by USERRA.

86. Plaintiff engaged in protected activity and exercised his rights under USERRA when he requested reemployment to the appropriate position and when he requested placement on the promotion list.

87. USERRA prohibits employers from retaliating against employees who have complained about a violation of the statute.

88. Plaintiff engaged in protected activity and complained that Defendant was violating the law in conversations with management and Human Resources as set forth more fully above.

89. In close temporal proximity to Plaintiff's protected activity, Defendant failed to promote him, reduced his bonuses, failed to assign him additional responsibility, stripped him of managerial functions, and prevented him from advancing in his career.

90. Defendant failed to take Plaintiff's complaints seriously, responded negatively to his complaints, told him to "leave it alone" and otherwise failed to take any action or undertake any investigation into whether its actions were in violation of the law.

91. Defendant's actions forced Plaintiff to resign from his position in August 2017.

92. Defendant's actions were willful and taken with reckless disregard of the law including after Plaintiff notified Defendant that it was violating the law.

93. Defendant's actions during the period 2011 through August 2017 constitute a continuing violation of the statute.

94. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with liquidated damages and costs and attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Military Status Discrimination in Violation of the NYHRL)

95. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

96. "Military status" is protected from discrimination under the provisions of the NYHRL.

97. Defendant violated the NYHRL when it, among other things, because of Plaintiff's military status, failed to promote Plaintiff, including paying Plaintiff bonuses commensurate with a more senior position; failed to consider Plaintiff for promotion; failed to pay Plaintiff adequate bonuses; stripped Plaintiff of his managerial functions and failed to assign him responsibility commensurate with his seniority; and prevented Plaintiff from advancing in his career, thereby also diminishing Plaintiff's earning capacity in subsequent employment.

98. Defendant violated the NYHRL when it treated other employees outside of Plaintiff's protected class more favorably than Plaintiff, including promoting individuals of comparable seniority and experience, but not Plaintiff, as well as promoting individuals less senior to and less qualified than Plaintiff, but not Plaintiff.

99. Throughout the relevant time period, Defendant expressly advised Plaintiff that he was not being promoted due to his military service, and Plaintiff was consistently told that he could not be promoted, and that he should not expect to be promoted, if he was going to miss time from work for military duty, notwithstanding his qualifications and accomplishments.

100.    Defendant's actions forced Plaintiff to resign from his position in August 2017.

101.    Defendant's actions during the period 2011 through August 2017 constitute a continuing violation of the statute.

102.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYHRL)

103.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

104.    Plaintiff engaged in protected activity when he complained to management and Human Resources that Defendant's actions taken because of his military service were in violation of the law.

105.     In close temporal proximity to Plaintiff's protected activity, Defendant failed to promote him, reduced his bonuses, stripped him of managerial functions and increased responsibility, and prevented him from advancing in his career.

106.     Defendant failed to take Plaintiff's complaints seriously, responded negatively to his complaints, told him to "leave it alone" and otherwise failed to take any action or undertake any investigation into whether its actions were in violation of the law.

107.     Defendant's actions forced Plaintiff to resign from his position in August 2017.

108.     Defendant's actions were willful and taken with reckless disregard of the law including after Plaintiff notified Defendant that it was violating the law.

109.     Defendant's actions constitute a continuing violation of the statute.

110.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Race Discrimination in Violation of the NYHRL)

111.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

112.     Plaintiff is African American and, at all times relevant, the decisionmakers with respect to his employment, promotions and bonuses were Caucasian.

113.     Defendant violated the NYHRL when it, among other things, because of Plaintiff's race, failed to promote Plaintiff, including paying Plaintiff bonuses commensurate with a more senior position; failed to consider Plaintiff for promotion; failed to pay Plaintiff adequate bonuses; stripped Plaintiff of his managerial functions and failed to assign him increased responsibility

commensurate with his seniority; and prevented Plaintiff from advancing in his career, thereby also diminishing Plaintiff's earning capacity in subsequent employment.

114.    Defendant violated the NYHRL when it treated other employees outside of Plaintiff's protected class more favorably than Plaintiff, including promoting individuals of comparable seniority and experience, but not Plaintiff, as well as promoting individuals less senior to and less qualified than Plaintiff, but not Plaintiff.

115.    Defendant's actions forced Plaintiff to resign from his position in August 2017.

116.    Defendant's actions constitute a continuing violation of the statute.

117.    By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Uniformed Service Discrimination in Violation of the NYCHRL)

118.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

119.    "Uniformed service" status is protected from discrimination under the provisions of the NYCHRL.

120.    At all times relevant, Plaintiff was a member of the uniformed services within the meaning of the NYCHRL.

121.    Defendant violated the NYCHRL when it, among other things, because of Plaintiff's military status, failed to promote Plaintiff, including paying Plaintiff bonuses commensurate with a more senior position; failed to consider Plaintiff for promotion; failed to pay

Plaintiff adequate bonuses; stripped Plaintiff of his managerial functions and failed to assign him increased responsibility commensurate with his seniority; and prevented Plaintiff from advancing in his career, thereby diminishing Plaintiff's earning capacity in subsequent employment.

122.     Throughout the relevant time period, Defendant expressly advised Plaintiff that he was not being promoted due to his military service, and Plaintiff was consistently told that he could not be promoted, and that he should not expect to be promoted, if he was going to miss time from work for military duty, notwithstanding his qualifications and accomplishments.

123.     Defendant's actions forced Plaintiff to resign from his position in August 2017.

124.     Defendant's actions during the period 2011 through 2017 constitute a continuing violation of the statute.

125.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

126.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

127.     Plaintiff engaged in protected activity when he complained to management and Human Resources that Defendant's actions taken because of his military service were in violation of the law.

128.     In close temporal proximity to Plaintiff's protected activity, Defendant failed to promote him, reduced his bonuses, stripped him of managerial functions and increased responsibility, and prevented him from advancing in his career.

129.     Defendant failed to take Plaintiff's complaints seriously, responded negatively to his complaints, told him to "leave it alone" and otherwise failed to take any action or undertake any investigation into whether its actions were in violation of the law.

130.     Defendant's actions forced Plaintiff to resign from his position in August 2017.

131.     Defendant's actions were willful and taken with reckless disregard of the law including after Plaintiff notified Defendant that it was violating the law.

132.     Defendant's actions constitute a continuing violation of the statute.

133.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Race Discrimination in Violation of the NYCHRL)

134.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

135.     Plaintiff is African American and, at all times relevant, the decisionmakers with respect to his employment, promotions and bonuses were Caucasian.

136.     Defendant violated the NYCHRL when it, among other things, because of Plaintiff's race, failed to promote Plaintiff, including paying Plaintiff bonuses commensurate with a more senior position; failed to consider Plaintiff for promotion; failed to pay Plaintiff adequate bonuses; stripped Plaintiff of his managerial functions and failed to assign him increased responsibility commensurate with his seniority; and prevented Plaintiff from advancing in his career, thereby also diminishing Plaintiff's earning capacity in subsequent employment.

137.     Defendant violated the NYCHRL when it treated other employees outside of Plaintiff's protected class more favorably than Plaintiff, including promoting individuals of comparable seniority and experience, but not Plaintiff, as well as promoting individuals less senior to and less qualified than Plaintiff, but not Plaintiff.

138.     Defendant's actions forced Plaintiff to resign from his position in August 2017.

139.     Defendant's actions constitute a continuing violation of the statute.

140.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined by a trier of fact including but not limited to back and front pay, lost bonuses, lost benefits, lost earning capacity, and compensatory damages, including damages for emotional distress and mental anguish, together with costs and attorneys' fees.

## JURY DEMAND

141.     Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff demands Judgment against Defendant as follows;

(A) Declaring that Defendant's actions are in violation of the USERRA, the NYHRL and the NYCHRL; and

(B) On the First and Second Causes of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees and liquidated damages; and

(C) On the Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Causes of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees; and

(D) Such other legal and equitable relief as the Court deems appropriate under the circumstances and which is available by law or statute.

Dated: April 6, 2020
Saratoga Springs, New York

D'ORAZIO PETERSON LLP

By: /s/ *Giovanna A. D'Orazio*
Giovanna A. D'Orazio (GD5849)
Scott M. Peterson (SP6683)
125 High Rock Avenue
Saratoga Springs, NY 12866
(tel) 518-308-8339
(fax) 518-633-5106
(email) gad@doraziopeterson.com
smp@doraziopeterson.com